# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

LUCAS E. W.,[1]

|  | Plaintiff, |  |
|---|---|---|
| v. |  | 8:23-CV-849 (MJK) |

COMMISSIONER OF SOCIAL SECURITY,

|  | Defendant. |
|---|---|

---

LAWRENCE D. HASSLER, ESQ., for Plaintiff
GEOFFREY M. PETERS, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 4). Both parties filed briefs (Dkt. Nos. 11, 17 and 18),

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

1

which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.   PROCEDURAL HISTORY

On September 13, 2019, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 2019. (Administrative Transcript ("T.") 10, 352-55). Plaintiff's application was denied initially on January 16, 2020 (T. 10, 153, 207-09), and upon reconsideration on July 17, 2020 (T. 10, 182, 217-19). On December 14, 2020, Administrative Law Judge ("ALJ") Elizabeth W. Koennecke conducted a hearing during which plaintiff and his mother both testified. (T. 1193-1201).[2] The hearing continued May 18, 2021 during which Dr. Lusk, the vocational expert ("VE"), testified. (T. 40-48). On May 27, 2021, the ALJ issued a decision denying plaintiff's claim. (T. 10-28). The ALJ's decision became the Commissioner's final decision when the Appeals Council ("AC") denied plaintiff's request for review on May 22, 2023.  (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically

---

[2] Prior to the December 14, 2020 hearing, plaintiff amended his alleged disability onset date to September 13, 2019. (T. 10).

determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than

twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that
> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520

and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner] next
> considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which
> meets or equals the criteria of an impairment listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the [Commissioner]
> will consider him disabled without considering vocational factors such as
> age, education, and work experience . . . .  Assuming the claimant does not
> have a listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform his past
> work, the [Commissioner] then determines whether there is other work
> which the claimant can perform.

*See Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*); see also* 20 C.F.R. §

404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian,* 708 F.3d at 418. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian,* 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)) (internal quotation marks omitted); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 (2d Cir. 2013) ("the reviewing

court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

Plaintiff was approximately 18 years old on the alleged disability onset date in 2019. (T. 1195). Plaintiff earned a high school degree but did not plan to further his education because "[i]t's too hard to work with people" and he gets "really nervous and anxious." (T. 1195-96). At the time of the administrative hearing, plaintiff lived alone in an apartment next door to his parents. (T. 1196).

Plaintiff testified that he is unable to work because he becomes "too anxious and nervous around people to the point where [he] can sometimes start to be paranoid of

them." (T. 1197). Plaintiff also testified that he suffers from panic attacks when he is around people and starts pacing and raising his voice. (*Id.*). Plaintiff experienced difficulty regulating his emotions and became paranoid two to three times a week which caused him to "huddle up in a corner" and think that someone is trying to kill or hurt him. (T. 1198-99).

Plaintiff further testified that he suffers from hallucinations, hears voices in a language he does not understand, and sees creatures. (T. 1199). Plaintiff testified that he suffers panic attacks several times per week which require him to sit or lie down. (T. 1200). Plaintiff stated that he has more hallucinations when he is stressed. (*Id.*). Plaintiff treated with a physician and counselor at United Helpers Care, Inc. ("United Helpers") in Ogdensburg, New York. (*Id.*). Plaintiff has been hospitalized for mental health reasons. (T. 1201).

Plaintiff testified that he could do small amounts of housework and cannot stay on task too long. (T. 1202). Plaintiff stated he is afraid to leave his house and becomes anxious around strangers. (*Id.*). On a typical day, plaintiff woke between 12:00 p.m. and 2:00 p.m. and it took him several hours to take his medications and brush his teeth. (*Id.*). Most of the day, plaintiff did schoolwork. (*Id.*). Plaintiff tried to cook once a week, but usually just prepared a frozen meal or ordered takeout. (*Id.*). Plaintiff was unable to get of out bed three to four days each month and only got up to use the bathroom. (*Id.*). Plaintiff  testified that he "used to be able to hang out with friends and

do stuff," but is no longer able to do so. (T. 1204.). Plaintiff stated that he "rarely ever leave[s]" his apartment. (*Id.*).

Melinda W., plaintiff's mother, testified that she does plaintiff's grocery shopping and helps him with some house cleaning. (T. 1205). Melinda W. also testified that plaintiff called or texted her at odd hours with questions about his schedule. (T. 1206). She stated that plaintiff also calls in the middle of the night when he hears noises. (*Id.*). According to plaintiff's mother, he did not leave the house because he was afraid someone was going to kill him. (T. 1207). Plaintiff no longer attended church and only visited with friends every twelve to sixteen weeks. (T. 1208-09). Melinda W. further testified that plaintiff stayed in bed for days after his friends' visit. (T. 1209). Plaintiff was unable to do anything else on days he had a call or an appointment. (*Id.*). Melinda W. testified that she cleaned plaintiff's apartment, took out the garbage and washed dishes left for months. (*Id.*).

In response to the ALJ's hypothetical, the VE testified that plaintiff could work as a linen room attendant, warehouse worker, general laborer, and packager. (T. 44-45). The VE also testified that employers generally would not tolerate more than one unexcused absence per month, including late arrivals and early departures. (T. 47). According to the VE, employers generally would not tolerate an employee being off task more than 10% in an eight-hour workday. (T. 48). The VE further testified that

plaintiff's panic attacks could potentially be disruptive and "definitely impact co-workers" depending on where the attack occurred. (*Id.*).

## IV.   <u>THE ALJ'S DECISION</u>

The ALJ determined at step one of the sequential evaluation that plaintiff has not engaged in substantial gainful activity since September 13, 2019, the alleged onset date, as amended. (T. 13). Next, the ALJ found that "all [plaintiff's] mental diagnoses as variously characterized" were severe impairments.  (T. 13). At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; handle simple, repetitive work-related stress, in that he can make occasional decisions directly related to the performance of simple tasks involving goal-oriented work, rather than work involving a production-rate pace; the position should have consistent job duties that does not require the claimant to supervise or manage the work of others; he should avoid work requiring more complex interaction or joint effort to achieve work goals; and he can have no contact with the public.

 (T. 17).

8

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). The ALJ further noted that she considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 22).

At step five, the ALJ found that considering the plaintiff's age, education, residual functional capacity ("RFC") as well as the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 28). Accordingly, the ALJ concluded that plaintiff was not disabled. (*Id.*).

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff argues that remand is warranted because the ALJ made numerous determinations that were not supported by substantial evidence and that the ALJ failed to apply the correct legal standards. Specifically, plaintiff contends that the ALJ erred by failing to:

1. issue a subpoena for outstanding medical records from United Helpers;

2. explain or support her finding that plaintiff's impairments do not meet or equal listing level severity;

3. provide an analysis to support her finding that plaintiff's claims cannot overcome the medical evidence of record; and

4. support, with substantial evidence, her rejection of the opinions of plaintiff's treating mental health providers.

(Plaintiff's Brief (Pl. Br.) at 13-25) (Dkt. No. 11). Plaintiff further argues that the AC failed to properly consider plaintiff's medical records from United Helpers. (*Id.* at 12).

Defendant contends that the Commissioner's determination should be affirmed because there is substantial evidence to support the ALJ's determination that plaintiff's mental impairments were not disabling. (Defendant's Brief (Def. Br.) at 4-12) (Dkt. No. 17).

For the reasons stated below, the court finds that the Commissioner's determination should be upheld, because the ALJ's decision denying disability was supported by substantial evidence and free from legal error.

## VI.    **SUBPOENA**

### A.    **Legal Standard**

The issuance of subpoenas in social security administrative proceedings is primarily governed by 20 C.F.R. § 404.950(d)(1) which provides that:

> when it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the

10

> appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at a hearing.

The decision to issue a subpoena is within the sound discretion of the ALJ. *See Yancey v. Apfel*, 145 F.3d 106 (2d Cir. 1998) (citing *Wallace v. Bowen*, 869 F.2d 187, 194 (3d Cir. 1988)) ("The question of whether to issue a subpoena to compel cross-examination of a reporting physician is a question entrusted to the ALJ who is obligated to develop the record fully." (quotation omitted)). "Due process does not require the ALJ to issue a subpoena every time a claimant makes such a request." *Sara S. v. Kijakazi*, No. 5:20-CV-1005 (DJS), 2022 WL 913095, at *4 (N.D.N.Y. Mar. 29, 2022).

Parties to a hearing who wish to subpoena documents or witnesses must file a written request including the following:

> names of the witnesses or documents to be produced; [a description of] the address or location of the witnesses or documents with sufficient detail to find them; [a statement of] the important facts that the witness or document is expected to prove; and [an indication of] why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 404.950(d)(2).

## B.    Analysis

By letter dated November 18, 2020, plaintiff's counsel requested that the ALJ issue a subpoena to United Helpers for plaintiff's "records" for the "period of 2018 to present." (T. 283). Although timely, counsel's request failed to provide any narrative as to what "important facts" the documents would prove or why the "important facts"

"could not be proven without issuing a subpoena." *See* 20 C.F.R. § 404.950(d)(2). Further, counsel's April 13, 2021 letter to the ALJ (T. 634-35) requesting the issuance of a subpoena to United Helpers prior to the May 18, 2021 administrative hearing still failed to articulate why the "important facts" to be gleaned from the documents could not be established in the absence of a subpoena being issued.

The transcript from the May 18, 2021 administrative hearing (T. 40-49) highlights the miscommunication between plaintiff's counsel and the ALJ regarding issuing a subpoena to United Helpers. What is clear, however, is the ALJ's efforts to determine whether United Helpers had any records that warranted issuing a subpoena in the first instance. (T. 636-38). Although the ALJ ultimately did not issue a subpoena and notwithstanding the fact that additional medical records ("Supplemental Records") were submitted to the AC subsequent to the ALJ's May 27, 2021 decision, the court is satisfied that the ALJ made a good faith effort to ensure that the record was fully developed. Even if the court concluded that the ALJ failed to make a good faith effort to fully develop the record, such failure would have amounted to harmless error for the reasons more fully articulated below.[3]

---

[3] The court has reviewed the Supplemental Records. It is the judgment of the court that the Supplemental Records did not deprive the ALJ of substantial evidence on which to base her decision.

## VII.   **APPEALS COUNCIL RULING**

### A.    **Legal Standard**

The AC must consider any "new and material evidence" submitted upon an administrative appeal to the extent it was not before the ALJ "and relates to the period on or before the date of the hearing decision and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Evidence is considered new if "not merely cumulative of what is already in the record, and . . . material if it is both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Sistrunk v. Colvin*, No. 14-CV-3208, 2015 WL 403207, at *7 (E.D.N.Y. Jan. 28, 2015) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1991)) (internal quotation marks omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Jones*, 949 F.2d at 60. Finally, 20 C.F.R. § 404.970(b) requires a claimant to show good cause for her failure to present the evidence earlier. *See Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period). If the AC declines a claimant's request for review of the ALJ's decision, "[t]he new evidence submitted to the Appeals Council following the

ALJ's decision becomes part of the administrative record for judicial review." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

### B.    Analysis

Although relevant to the applicable time period at issue, the Supplemental Records are neither "new" nor "relevant." They are merely cumulative to the medical records evaluated by the ALJ, and do not provide a basis for disturbing the ALJ's decision. The Supplemental Records are consistent with the records reviewed by and relied on by the ALJ in formulating her decision. The Supplemental Records evidence plaintiff's history of auditory and visual hallucinations (T. 61, 76, 81, 119, 142) and do not document an exacerbation of plaintiff's impairments. Further, the medical records reviewed by the ALJ (T. 1082, 1084, 1085, 1094) are consistent with the Supplemental Records which evidence plaintiff's reports of doing "well," "alright" and "good." (T. 89, 92, 95, 98, 101, 110). The medical records considered by the ALJ (T. 860, 1082, 1084, 1092, 1094) are also consistent with the Supplemental Records which document plaintiff's reports of his medications being effective (T. 95, 123), and his increased socialization (T. 101). Notably, on several occasions, the Supplemental Records reflect plaintiff's admission that his symptoms, including hallucinations, have decreased. (T. 104, 110).

Accordingly, the court finds that the AC's denial of review was supported by substantial evidence and does not constitute a basis for remand.

## VIII.  <u>LISTED IMPAIRMENT</u>

### A.  **Legal Standard**

At step three of the sequential analysis, the ALJ must determine if a plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019). "Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that [his] medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *See Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

### B.  **Analysis**

Plaintiff contends that the ALJ's step three analysis is deficient and requires remand because despite the ALJ's determination "that plaintiff suffers from multiple

categories of mental impairments described in the listings," she found that "listing level severity was neither met nor equaled." (Pl. Br. at 15). The court disagrees.

At issue here are sections 12.03, 12.04, and 12.06 of the Listings. (T. 14). In finding that the severity of plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of any listing, the ALJ considered the four broad functional areas, contained in the regulations, for rating the degree of an individual's functional limitations, and supportably concluded that the plaintiff did not satisfy the "Paragraph B" criteria. To satisfy the "Paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning which includes: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

First, the ALJ determined that plaintiff had no limitation in understanding, remembering, and applying information. (T. 14). This area of mental functioning refers to the claimant's ability to learn, recall, and use information to perform work activities. *See* 20 C.F.R. § 404, Subpart P, App. 1, § 12.00(E)(1). The ALJ considered plaintiff's

intelligence testing administered to him in 2016 by his school district which demonstrated that plaintiff had a full-scale IQ score of 93, and the school psychologist's determination that plaintiff's cognitive abilities were within the average range of intelligence. (T. 14-15). The ALJ also cited the November 27, 2019 report issued by consultative psychiatric examiner Dennis M. Noia, Ph.D., who found that plaintiff's judgment was fair and that his "general fund of information appear[ed] to be appropriate to experience." (T. 790). Dr. Noia's assessment was consistent with the June 10, 2020 psychiatric assessment conducted by Dr. Thesee, plaintiff's treating psychiatrist, who opined that plaintiff's recent and remote memory was intact, and that his attention/concentration was within normal range. (T. 884).

Next, the ALJ concluded that plaintiff had a moderate limitation in the domain of interacting with others which refers to the claimant's ability to relate and work with supervisors, co-workers, and the public. *See* 20 C.F.R. § 404, Subpart P, App. 1, § 12.00 (E)(2). In support of her determination, the ALJ noted plaintiff's subjective complaints reported to Dr. Noia during his November 27, 2019 consultative examination. (T. 15). Specifically, plaintiff complained of having low self-esteem, thoughts that "other people are looking at him," and anxiety around other people, including some hypervigilance. (T. 15, 799). Plaintiff also reported relating well with friends and family. (T. 15, 791). Dr. Noia's consultative examination report was consistent with  PMHNP Hance's ("NP Hance") treatment notes where plaintiff

reported going out with friends (T. 860), and with the Mobile Integration Team's progress note which indicated that plaintiff went bowling with friends. (T. 1082). Further, Dr. Noia's report was consistent with Dr. Thesee's February 11, 2021 Medical Source Statement which stated that plaintiff had a moderate limitation interacting with supervisors and co-workers. (T. 1174).

The ALJ then considered the third functional area of concentrating, persisting, or maintaining pace. In this domain, the ALJ determined that plaintiff had a moderate limitation. (T. 15). In support of her determination, the ALJ noted plaintiff's subjective complaints reported to Dr. Noia during his November 27, 2019 consultative examination. (T. 15). In addition to visual and auditory hallucinations, plaintiff reported having problems with his memory and difficulties concentrating. (T. 15, 789). Upon examination, Dr. Noia concluded that plaintiff's attention and concentration were intact, plaintiff's thought processes were coherent and goal oriented, and that there was no evidence of delusions, hallucinations, or disordered thinking. (T. 15, 790). Dr. Noia's assessment was consistent with the June 10, 2020 psychiatric assessment conducted by Dr. Thesee who opined that plaintiff's recent and remote memory was intact, that his attention/concentration was within normal range, and that plaintiff's cognitive functioning was within the average range. (T. 16, 884).

Last, the ALJ considered the fourth functional area of adapting or managing oneself.  In this domain, the ALJ determined that plaintiff had a moderate limitation.

18

During his November 27, 2019 consultative examination with Dr. Noia, plaintiff reported that he was unable to work because he was still in school and could not handle stress, that he had difficulty falling asleep, that he usually overslept, that his appetite had decreased, that he was having symptoms of depression, including dysphoric moods, psychomotor retardation, loss of usual interests, fatigue and loss of energy, diminished self-esteem, problems with memory, problems with concentration, and diminished sense of pleasure. (T. 16, 789). Nevertheless, plaintiff did not report any significant manic-related symptoms and denied having any suicidal or homicidal ideation. (T. 16, 789). Plaintiff presented to Dr. Noia as being appropriately dressed, with good personal hygiene and grooming which was consistent with the record as a whole. (T. 808, 816, 823, 829, 832, 839, 849, 854, 869). Plaintiff reported being able to dress, bathe, and groom himself with reminders, cook and prepare food with assistance, do general cleaning, and laundry. (T. 16, 790). Plaintiff also reported avoiding shopping, never needing to manage money, that he did not drive, and that he did not use public transportation. (T. 16, 790).

The ALJ's determination that plaintiff's mental impairments, considered singly and in combination, did not satisfy the "Paragraph B" criteria is supported by substantial evidence. Specifically, the ALJ's analysis is supported by treatment notes, plaintiff's statements, and is consistent with medical opinions of record. *See Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1170 (ATB), 2020 WL 586868, at *5 (N.D.N.Y.

Feb. 6, 2020) (finding substantial evidence consisting of plaintiff's testimony, intact daily activities, observations from his physicians, and consultative examination results supported the ALJ's "Paragraph B" analysis of no more than moderate limitations in any domain); *see also Wayne P. v. Kijakazi*, No. 8:22-CV-653 (ATB), 2023 WL 3949877 (N.D.N.Y. June 12, 2023) (holding that the ALJ's listing determination at step three was supported by substantial evidence where the ALJ explicitly discussed each of the "Paragraph B" criteria and cited evidence in the record supporting each consideration).

The ALJ also considered whether the "Paragraph C" criteria for listings 12.03, 12.04, and 12.06 were satisfied. (T. 16). Paragraph "C" requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(c).

The ALJ's determination that Plaintiff did not satisfy the "Paragraph C" criteria is also supported by substantial evidence. Specifically, the ALJ noted that the record does not demonstrate that plaintiff "has had only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not

already part of the claimant's daily life." (T. 16). The ALJ further noted that that there "is nothing of record to suggest that the claimant has required a highly structured setting to diminish the symptoms and signs of his psychiatric condition during the period under consideration, and that, despite the diminished symptoms and signs, he has achieved only marginal adjustment." (*Id.*). Accordingly, remand is not warranted on this basis.

## IX.   **RFC/EVALUATION OF MEDICAL EVIDENCE**

### A.   **Legal Standards**

#### 1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R.

§§ 404.1545, 416.945;  *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y.

1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.*

*Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply

make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717

F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone v. Apfel*, 70 F. Supp. 2d at 150

(citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta v. Bowen*, 737

F. Supp. at 183; *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016);

*Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC

assessment must also include a narrative discussion, describing how the evidence

supports the ALJ's conclusions, citing specific medical facts, and non-medical

evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049,

at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also*

*Angelo Michael G. v. Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792

(N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F.2d at 587). "[A]n RFC finding is

administrative in nature, not medical, and its determination is within the province of the

ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20

C.F.R. § 404.1527 (d)(2)). Furthermore, it is within the ALJ's discretion to resolve

genuine conflicts in the evidence. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

## 2.    Evaluation of Medical Opinion Evidence

According to the applicable regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinions with objective medical evidence and supporting explanation.")

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medial source is supported, or not supported, by the entire record.") *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

An ALJ must also consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more

medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

## B.  Analysis

The court disagrees with plaintiff's argument that the ALJ failed to properly evaluate the opinions of his treating sources. The record reflects that the ALJ properly evaluated the supportability and consistency factors as to the opinions proffered by Dr. Thesee and NP Hance.

### 1.  Medical Evidence

#### a.  Dennis M. Noia, Ph.D.

Psychiatric examiner Dennis M. Noia, Ph.D. consultatively examined plaintiff on November 27, 2019. (T. 788-92). Plaintiff reported being unable to work because he was still in school and "[couldn't] handle stress." (T. 788). Plaintiff reported symptoms of depression, including dysphoric moods, diminished self-esteem, problems with memory, difficulty concentrating, and diminished sense of pleasure. (T. 789). Plaintiff also reported symptoms of anxiety, especially around other people, excessive apprehensiveness, worry, and visual and auditory hallucinations which occur "about one per week" and are short in duration. (*Id.*). Plaintiff reported that he could dress, bathe and groom himself with reminders, cook and prepare food with assistance, do

some general cleaning, and laundry. (T. 790). Plaintiff reported not driving or using public transportation and avoiding shopping. (*Id.)*.

On examination, Dr. Noia noted that plaintiff was cooperative, and that his social skills, overall presentation, and manner of relating were adequate. (T. 790). Dr. Noia further reported that plaintiff's thought processes were coherent, goal directed with no evidence of delusions, hallucinations, or disordered thinking. (*Id.*). Dr. Noia observed that plaintiff appeared depressed, and that plaintiff's recent and remote memory skills were intact, as were his attention and concentration. (*Id.*).

Dr. Noia opined that plaintiff did not have any limitations understanding, remembering, or applying simple or complex directions and instruction. (T. 791). Dr. Noia also opined that plaintiff had mild limitations using reasoning and judgment to make work-related decisions. (*Id.*). Further, Dr. Noia opined that plaintiff had moderate to marked limitations interacting adequately with supervisors, coworkers, and the public. (*Id.*). Dr. Noia also opined that plaintiff had mild limitations sustaining concentration and performing a task at a consistent pace and that he had moderate limitations sustaining an ordinary routine and regular attendance at work. (*Id.*). According to Dr. Noia, plaintiff had marked limitations regulating emotions, controlling behavior, and maintaining well-being. (*Id.*). Finally, Dr. Noia opined that plaintiff had no limitations maintaining personal hygiene, wearing appropriate attire, being aware of normal hazards, and taking appropriate precautions. (*Id.*).

The ALJ found Dr. Noia's opinion to be less persuasive. (T. 24). The ALJ did find support in the evidence of record for Dr. Noia's Medical Source Statement (T. 1173-75), to the extent he opined that plaintiff appeared to have no limitations understanding, remembering, or applying simple directions and instructions; no limitations understanding, remembering, or applying complex directions and instructions; mild limitations using reasoning and judgment to make work-related decisions; mild limitations sustaining concentration and performing a task at a consistent pace; moderate limitations sustaining an ordinary routine and regular attendance at work; no limitations maintaining personal hygiene and wearing appropriate attire; and no limitations being aware of normal hazards and taking appropriate precautions. (*Id.*).

The ALJ did, however, reject that portion of Dr. Noia's Medical Source Statement (T. 1773-75) which opined that plaintiff appeared to have moderate-to-marked limitations interacting adequately with supervisors, co-workers, and the public; marked limitations regulating emotions, controlling behavior, and maintaining well-being; and that plaintiff's psychiatric problems might significantly interfere with his ability to function on a daily basis. (*Id.*). The ALJ found that this portion of Dr. Noia's opinion was not supported by his examination of plaintiff and was inconsistent with the assessments of Drs. Ochoa, Momot-Baker, and Gonzales.

### b. Elke Lorensen, M.D.

Dr. Lorensen, an internal medicine physician, consultatively examined plaintiff on November 27, 2019. (T. 794-97). Plaintiff reported cooking twice weekly, cleaning daily, doing laundry weekly, dressing, and showering daily. (T. 795). Plaintiff also reported watching television, listening to the radio, socializing, and playing video games. (*Id.*). Upon examination, Dr. Lorensen observed that plaintiff was not in acute distress, did not need help changing for the exam, or ambulating on and off the exam table. (*Id.*). Dr. Lorensen opined that plaintiff had no gross physical limitations. (T. 23, 797).

The ALJ found Dr. Lorensen's opinion to be persuasive because it was based upon a direct examination of plaintiff, supported by the findings included in the report, as well as the doctor's familiarity with the policies and evidentiary requirements of the SSA's disability program. (T. 23).

### c. Dr. S. Putcha and Dr. I. Seok

The ALJ also considered the opinions of state agency consultants Dr. Putcha and Dr. Seok, both of whom opined that plaintiff did not have any exertional limitations. (T. 161, 175).

The ALJ found the opinions of Drs. Putcha and Seok to be persuasive based on their program knowledge. (T. 23). The ALJ further found that that their opinions were

28

supported by their review of the evidence of record, and the detailed explanation they furnished for their opinions. (*Id.*).

### d.  J. Ochoa Psy.D.

State agency reviewer, Dr. Ochoa determined that plaintiff had moderate limitations in his ability to: a) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; b) work in coordination with or in proximity to others without being distracted by them; c) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; d) interact appropriately with the general public; e) accept instructions and respond appropriately to criticism from supervisors; f) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; g) respond appropriately to changes in the work setting; h) travel in unfamiliar places or use public transportation; and i) set realistic goals or make plans independently of others. (T. 161-63).

Dr. Ochoa opined that plaintiff was able to understand and remember complex instructions and work procedures, and that he might have lapses in focus, motivation, and reliability, but otherwise appeared capable of completing work-like procedures and sustaining a routine. (T. 23-24). Dr. Ochoa further opined that plaintiff might have difficulty with social interaction and might require limited interaction with others. (T.

24). Finally, Dr. Ochoa opined that plaintiff exhibited some difficulty with adaptation but was able to cope with basic changes and make routine decisions (*Id.*).

The ALJ found Dr. Ochoa's opinion to be persuasive based on the doctor's agency knowledge and review of the medical evidence of record. (T. 23). The ALJ also found that Dr. Ochoa's opinion was supported by the findings in his report and consistent with the evidence of record. (T. 17).

### e.  Dr. Momot-Baker

State agency reviewer, Dr. Momot-Baker, assessed plaintiff and determined that he had moderate limitations in his ability to: a) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; b) work in coordination with or in proximity to others without being distracted by them; c) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; d) interact appropriately with the general public; e) accept instructions and respond appropriately to criticism from supervisors; f) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; g) respond appropriately to changes in the work setting; h) travel in unfamiliar places or use public transportation; and i) set realistic goals or make plans independently of others. (T. 178-79).

Dr. Momot-Baker opined that plaintiff was able to understand and remember detailed instructions and work procedures, that plaintiff might have some lapses in focus, motivation, and reliability, but otherwise appeared capable of completing work-like procedures and sustaining a routine. (T. 179). Dr. Momot-Baker further opined that plaintiff might have some difficulty with intense and prolonged social interactions but could relate to others in superficial work interactions. (*Id.*). Finally, Dr. Momot-Baker stated that plaintiff exhibited some difficulty with adaptation but was able to cope with basic changes and make routine decisions (*Id.*).

The ALJ found Dr. Momot-Baker's opinion to be persuasive based on the doctor's agency knowledge and review of the medical evidence of record. (T. 23). The ALJ also found that Dr. Ochoa's opinion was supported by the findings in his report and consistent with the evidence of record. (T. 17).

### f. Frank Gonzales Ph.D.

State agency reviewer, Dr. Gonzales opined that plaintiff retained the mental residual functional capacity for complex instructions/tasks, and that plaintiff could sustain a routine, with limited public contact. (T. 24).

The ALJ found Dr. Gonzales' opinion to be persuasive based on the doctor's agency knowledge and review of the medical evidence of record. (T. 23). The ALJ also found that Dr. Gonzales' opinion was supported by the findings in his report and consistent with the evidence of record. (T. 17).

31

### g. Dr. Schuessler

In an opinion dated October 10, 2019, Dr. Schuessler, plaintiff's primary care physician, opined that plaintiff did not have physical limitations. (T. 697). Specifically, Dr. Schuessler opined that plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations. (*Id.*).

The ALJ found Dr. Schuessler's opinion to be persuasive because it was consistent with the other opinion evidence of record. (T. 23).

### h. Dr. Thesee

Dr. Thesse, plaintiff's psychiatrist, submitted a Medical Source Statement dated February 11, 2021. (T. 1173-74). Dr. Thesee opined that plaintiff had no limitation in his ability to understand and remember short, simple instructions; no limitation in his ability to carry out short, simple instructions; a moderate limitation in his ability to understand and remember detailed instructions; a marked limitation to carry out detailed instructions; a slight limitation in his ability to make judgements on simple work-related decisions; a moderate limitation in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; a marked limitation in his ability to interact appropriately with the public; a moderate limitation in his ability to interact appropriately with supervisors and co-workers; a marked limitation in his ability to respond appropriately to work pressures in a usual work setting; and a

moderate limitation in his ability to respond appropriately to changes in a routine work setting (T. 1173-74).

The ALJ found Dr. Thesse's Medical Source Statement less persuasive. (T. 25). The ALJ found support for Dr. Thesee's Medical Source Statement except for that portion which opined that plaintiff had a marked limitation in his ability to carry out detailed instructions, and a marked limitation in his ability to respond appropriately to work pressures in a usual work setting. (*Id.*).

### i. Amanda L. Hance, PMHNP

NP Hance, one of plaintiff's mental health providers, completed a Medical Source Statement dated March 25, 2020. (T. 872-78). NP Hance opined that plaintiff was moderately limited in his ability to understand, remember, and carry out simple instructions; moderately limited in his ability to make judgments on simple work-related decisions; markedly limited in his ability to understand, remember, and carry out complex instructions; markedly limited in his ability to make judgments on complex work-related decisions; markedly limited in his ability to interact appropriately with the public, supervisors, and coworkers; markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id.* NP Hance also found that plaintiff's understanding, memory, sustained concentration, persistence, social interaction, and adaption were limited (*Id.*).

The ALJ found NP Hance's Medical Source Statement was unpersuasive because it was not supported by the medical evidence of record. (T. 26).

### 1. Medical Opinion Evaluation

#### a. Dr. Thesee

Plaintiff's suggestion that the ALJ's partial adoption of the limitations opined by Dr. Thesee was not based on substantial evidence and ran afoul of the supportability and consistency factors under the regulations is without merit. The ALJ was not obligated to adopt every limitation in Dr. Thesee's medical opinion and was entitled to weigh all the available evidence to make an RFC finding that was consistent with the record as a whole. *See Janet L. K. v. Saul*, No. 1:20-CV-0725 (GTS), 2021 WL 2592899, at *4 (N.D.N.Y. June 24, 2021) ("The ALJ need not adopt opinions in their entirety, but may instead adopt only those portions that she finds to be consistent with the record as a whole."); *see also Brittany B. v. Comm'r of Soc. Sec.*, No. 20-CV-07037, 2022 WL 16922127, at *4 (W.D.N.Y. Nov. 14, 2022) ("It is also well settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety."). Accordingly, to the extent plaintiff's argument rests on the fact that the ALJ did not adopt the entirety of limitations included in Dr. Thesee's opinion, that argument is not a proper basis for remand.

The ALJ supportably concluded that Dr. Thesee's check-box opinion regarding plaintiff's marked limitations was not supported by the record. (T. 25). In addition to

Dr. Thesee's February 11, 2021 Medical Source Statement not providing any narrative to support his findings of marked limitations, his May 13, 2020 NYSCRI Mental Status Exam found that plaintiff's thought process was logical and that plaintiff's thought content was within normal limits. (T. 1072). Further, during his June 10, 2020 psychiatric evaluation, Dr. Thesee noted that plaintiff's thought process was normal, that his insight and judgment were fair, and that his immediate, remote, and recent memory were intact. (T. 884-885). The ALJ also supportably concluded that Dr. Thesee's findings of marked limitations were inconsistent with the opinions of Drs. Ochoa, Momot-Baker, and Gonzales and with the record as a whole. (T. 25).

Plaintiff's efforts to undermine the ALJ's supportability and consistency evaluation of Dr. Thesee's opinion by arguing that she failed to issue a subpoena for the Supplemental Records is duplicative of prior arguments and is again rejected by the court for the reasons previously set forth herein. The Supplemental Records are duplicative of other evidence considered by the ALJ, Drs. Ochoa, Momot-Baker and Gonzales and do not support Dr. Thesee's overly restrictive opinion.

### b. NP Hance

NP Hance's March 25, 2020 Medical Source Statement is predicated in part on her opinion that plaintiff suffered from a cognitive impairment, memory loss, and attention deficits. (T. 875). The ALJ supportably concluded that NP Hance's opinion was inconsistent with the medical evidence of record. Specifically, plaintiff's

35

intelligence testing administered by his school district showed that he had a full-scale IQ score of 93, which placed his overall cognitive abilities in the average range. (T. 646). NP Hance's moderate and marked limitations are also inconsistent with and are not supported by Dr. Noia's November 27, 2019 consultative examination during which he found plaintiff to have intact attention and concentration, intact recent and remote memory skills, and average intellectual functioning. (T. 790). NP Hance's opinion that plaintiff suffered a cognitive loss, memory loss and attention deficits was also inconsistent with Dr. Thesee's June 10, 2020 psychiatric assessment during which he found that plaintiff's memory and attention/concentration were intact, and that his cognitive functioning was in the average range. (T. 884). The ALJ also correctly noted that NP Hance never formally tested plaintiff's cognitive functioning (T. 798-02, 807-10, 815-17, 828-30, 835-36, 849-51, 860-62, 868-70, 872-78).

NP Hance also opined that plaintiff was markedly limited in his ability to interact appropriately with the public; markedly limited in his ability to interact appropriately with supervisors; markedly limited in his ability to interact appropriately with co-workers; and markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 873). NP Hance based her opinion in part on plaintiff's "high anxiety when interacting with others." (T. 874-75). Although consistent with the moderate/marked limitations noted by Dr. Thesee in his February 11, 2021 Medical Source Statement (T. 1173-75), the ALJ supportably concluded that both opinions were inconsistent with the medical evidence of record as well as with the opinions rendered by state examiners Drs. Ochoa, Momot-Baker and

Gonzales.  For example, on September 10, 2019 plaintiff reported to the Mobile Integration Team that he had been bowling with friends and interacting with friends online (T. 1082). On October 30, 2019, plaintiff reported having friends to his house (T. 1084), and on November 20, 2019 plaintiff noted having friends to his house to play video games. (T. 1085). Further, plaintiff advised United Helpers on May 14, 2020 that his peer relationships and friendships were "good." (1059). On January 7, 2020 plaintiff reported to NP Hance having played poker with friends (T. 847). Notably, NP Hance's March 25, 2020 Medical Source Statement contradicts itself when she notes that plaintiff had a "limited" ability for social interaction. (T. 878) despite her earlier opinion of a marked limitation.

The opinions offered by NP Hance and Dr. Thesee regarding plaintiff's moderate/marked limitations to respond appropriately to usual work situations and to changes in a routine work setting are similarly not supported by substantial evidence. The medical evidence of record is devoid of any indication that plaintiff had anger issues or that he was a danger to others. During a comprehensive Psychosocial Assessment-Children on November 29, 2018, Dr. Thesee noted that plaintiff did not have any ideas, plans or intent to commit violence, and that there had not been any incidents of violent behavior. (T. 665). Also, during a psychiatric evaluation at United Helpers on January 10, 2019, Dr. Thesee did not note any history of "threatening/attempting or hurting others." (T. 660). Dr. Thesee's January 10, 2019 findings were consistent with the July 12, 2019 opinion of LCSW Theresa W. Samways who noted that plaintiff was not a "violence risk." (T. 1043). In his May 13, 2020 Adult

37

Comprehensive Admission Assessment, Dr. Thesee specifically noted that plaintiff did not have any "current or past difficulties with anger management" (T. 1062), that plaintiff had never been violent towards others (T. 1063), that "anger/aggression" was "not clinically indicated" (T. 1065), and that "antisocial behaviors" were "not clinically indicated." (*Id.*). Also, during a November 29, 2020 psychiatric evaluation, Dr. Saleem noted that plaintiff was "cooperative" (T. 1141), and "not a danger to self or others at the time." (T. 1142). NP Hance's marked limitations are also inconsistent with her own progress notes. (T. 798-99) (July 29, 2019 progress note denies any homicidal/suicidal ideations); (T. 807) (August 22, 2019 progress note denies any homicidal/suicidal ideations); (T. 815) (September 11, 2019 progress note denies any homicidal/suicidal ideations or  anger/irritability); (T. 829) (October 15, 2019 progress note denies any homicidal/suicidal ideations); (T. 835) (November 12, 2019 progress note denies suicidal ideation or anger/irritability); (T. 849-50) (January 8, 2020 progress note denies any homicidal/suicidal ideations or anger/irritability); (T. 860-61) (February 5, 2020 progress note denies any homicidal/suicidal ideations); (T. 860-61) (March 4, 2020 progress note denies any homicidal/suicidal ideations and notes that plaintiff was cooperative).

In contrast to the moderate/marked limitations noted by NP Hance and Dr. Thesee, Dr. Ochoa opined that plaintiff could tolerate limited interaction with others. (T. 163). Similarly, Dr. Momot-Baker opined that plaintiff was capable of "superficial work interactions," (T. 179) and Dr. Gonzales opined that plaintiff was capable of "limited public contact." (T. 191).

Notwithstanding plaintiff's objections, the ALJ permissibly determined that the opinions of the state agency examiners were more persuasive than those of NP Hance and Dr. Thesee. *See Gardenier v. Comm'r of Soc. Sec.*, No. 5:16-CV-0073 (WBC), 2017 WL 2389680, *5 (N.D.N.Y. June 1, 2017) (holding that the ALJ did not err in affording more weight to the non-examining source). It is well settled that an ALJ may rely on the opinion of a non-examining State agency medical consultant, insofar as they are deemed to be qualified experts in the field of social security disability. *See House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-152 (N.D.N.Y. 2012) (citing, inter alia, *Leach v. Barnhart*, No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")). The Second Circuit has recognized that the opinion of a non-examining State agency medical consultant may outweigh the opinion of a treating source. *See Camille v. Colvin*, 652 Fed. Appx. 25, 28 (2d Cir. 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")). The ALJ supportably concluded that the opinions of the consultative state examiners were supported by substantial evidence and more persuasive than the Medical Source Statements offered by NP Hance and Dr. Thesee.  Accordingly, remand is not warranted on this basis.

X.    **PLAINTIFF'S SUBJECTIVE COMPLAINTS**

        A. Legal Standard

In crafting a claimant's RFC, the ALJ must consider the claimant's reports of pain and other symptoms into account. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (quoting 20 C.F.R. § 404.1529(c)(3); *see also* Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged …" 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"

*Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (quoting 20 C.F.R. §

404.1529(a); *see also Genier*, 606 F.3d at 49.

If the objective medical evidence does not substantiate the claimant's symptoms,

the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d

Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's

subjective complaints by considering the record in light of the following symptom-

related factors: (1) claimant's daily activities; (2) location, duration, frequency, and

intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type,

dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5)

other treatment received to relieve symptoms; (6) any measures taken by the claimant to

relieve symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).

The ALJ must provide specific reasons for the determination. *See Cichocki,* 534

F. App'x at 76. However, the "'failure to specifically reference' a particular relevant

factor 'does not undermine the credibility assessment if there is substantial evidence

supporting the ALJ's credibility determination.'" *Del Carmen Fernandez,* 2019 WL

667743 at *11 (quoting *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744

(S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the

court to glean the rationale of an ALJ's decision.'" *Cichocki,* 534 F. App'x at 76

(quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). The ALJ's evaluation of subjective complaints is entitled to "great deference" such that is "can be reversed only if [it is] patently unreasonable." *Chasity A. v. Kijakazi,* No. 3:21-CV-551 (DJS), 2022 WL 1984148, at *5 (N.D.N.Y. June 6, 2022) (internal quotations and citation omitted). Although the ALJ must consider claimant's subjective complaints of pain when conducting the five-step disability analysis, the ALJ is not required to blindly accept the subjective testimony of a claimant when examining the issue of pain. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Rather, an ALJ has the discretion to evaluate a claimant's subjective testimony and "arrive at an independent judgment ... in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Mimms v. Heckler*, 750 F.2d 180, 185–86 (2d Cir. 1984); *see also Jeffery M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-435 (TJM), 2020 WL 3637646, *7 (N.D.N.Y. July 6, 2020) ("[T]he ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (quoting *Genier*, 606 F.3d at 49) (internal citations omitted)).

### B. Analysis

Plaintiff's vague and unsupported contention[4] that the ALJ failed to provide any analysis as to why his statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence is belied by the record. (T. 18-26).

The ALJ's decision documents her consideration of plaintiff's reports of anxiety around others, stress, decreased sleep, paranoia, auditory and visual hallucinations, and concentration difficulties. (T. 18-25). Notwithstanding plaintiff's symptoms, the ALJ's conclusion that the objective medical evidence of record did not support plaintiff's disability claim was supported by substantial evidence. Notably, the ALJ considered plaintiff's medication management and the efficacy of certain drugs. (T. 18-21); *see also* (R. 828) (NP Hance's October 15, 2019 progress note stated that plaintiff's dosage of Olanzapine was reduced to 15 mg and "seems to be working well to control his positive symptoms"); (T. 18) (ALJ's decision noted that on July 29, 2019 plaintiff stated that Risperidone was helping with his hallucinations); (T. 18) (ALJ's decision referenced that on September 11, 2019 plaintiff reported feeling better since he started

---

[4] A vague assignment of error does not preserve the issue for appeal. *See Cako v. Bureau of Citizenship & Immigration Servs.*, 161 Fed. Appx. 85, 87 (2d Cir. 2005) ("One conclusory statement in a brief is insufficient to raise an issue.") (citing *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n. 7 (2d Cir. 2005). Nevertheless, the court will address the issue as if it properly preserved.

taking Zyprexa); (T. 19) (ALJ's decision referenced plaintiff's October 15, 2019

treating session where he reported feeling less paranoia and not having any further

auditory hallucinations once his psychiatric medication was increased); (T. 20) (ALJ's

decision referenced plaintiff's January 28, 2020 appointment where plaintiff reported

taking his medications consistently); (T. 21) (ALJ's decision noted Melinda W.

reporting that plaintiff's medications were effective when he took them consistently);

(T. 21) (ALJ's decision referenced plaintiff's November 25, 2020 – November 27, 2020

psychiatric hospitalization during which his medications were modified and alleviated

his paranoid thoughts and made his auditory hallucinations manageable).

The ALJ's determination that plaintiff's symptoms are not entirely consistent

with the medical evidence and other evidence of record was also supported by the

myriad of normal or largely intact mental findings by plaintiff's treating providers

notwithstanding periodic variable mood and affect, and reports of hallucinations. (T. 18-

21); *see also* (T. 803, 805, 808-809, 816, 819, 823, 829, 850, 861, 1148-49, 1185);

*Marrero v. O'Malley*, No. 22-CV-7982, 2024 WL 1435923. *13 (S.D.N.Y. Feb. 14,

2024) (ALJ's RFC determination supported by substantial evidence where treatment

records from the relevant period reflect that plaintiff suffered from moderate depression,

and otherwise was alert and oriented, with an appropriate mood and affect, good

memory, no unusual perceptions, and no obsessions or compulsions) *report

recommendation adopted* 2024 WL 1328382 (March 28, 2024); *Monroe v. Comm'r of*

44

*Soc. Sec.*, 676 Fed. Appx. 5, 7 (2d Cir. Jan. 8, 2017) (plaintiff's contemporaneous

treatment notes, including many normal mental status findings, and his extensive

activities constituted substantial evidence for the RFC).

Finally, the ALJ's rejection of plaintiff's subjective complaints was supported by

plaintiff's daily activities, including playing video games and poker with friends (T. 20,

847), taking daily walks (T. 18), going to a birthday party, dinner, and a movie with

friends (T. 20, 860, 866), and attending appointments and completing tasks (T. 21,

1094). *See Sandra M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00485 (TWD), 2023 WL

4972707, *13 (Aug. 3, 2023) (the ALJ properly considered plaintiff's daily activities

when forming the RFC).

Plaintiff has not proffered any evidence to establish that the ALJ's consideration

of his subjective complaints was "patently unreasonable" and not entitled to "substantial

deference." *Chasity A.*, 2022 WL 1984148, at *5. Instead, plaintiff asserts in conclusory

fashion that the ALJ did not "specify what medical evidence was somehow inconsistent

with Plaintiff's claims or the claims of other interested parties" (Pl. Br. at 20), that the

ALJ failed to consider his mother's testimony from the administrative hearing (Pl. Br. at

20), and that the ALJ did not evaluate "a substantial volume of medical evidence." (Pl.

Br. at 21). All of plaintiff's arguments are without merit.

First, the ALJ's decision is replete with analysis as to what medical evidence she

deemed to be inconsistent with plaintiff's subjective complaints. (T. 18-26). The ALJ's

decision goes to great lengths to discuss plaintiff's progress notes and assessments from approximately twenty-one medical appointments which supportably refuted plaintiff's claims of disability.

Next, despite plaintiff's unsupported contention, the ALJ had no statutory obligation to explain why she rejected the testimony offered by Melinda W., a non-medical source. *See* 20 C.F.R. § 416.920c(d); *see also Byron D. v. Comm'r of Soc. Sec*, No. 20-CV-1439, 2022 WL 860880, at *4-5 (W.D.N.Y. Mar. 23, 2022) (finding that ALJ does not need to articulate how evidence from a nonmedical source was considered but does need to demonstrate that it was considered); J*avon W. v. Comm'r of Soc. Sec.*, _ F. Supp. 3d _, 2022 WL 4363786, at *4 (W.D.N.Y. 2022) (noting that ALJ is not required to articulate how he or she considered evidence from a nonmedical source). Nevertheless, the ALJ's decision demonstrates that she considered Melinda W.'s testimony. (T. 22). Accordingly, the ALJ's failure to further articulate her consideration of Melinda W.'s testimony is not reversible error.

Finally, plaintiff's conclusory assertion that there is a "substantial volume of medical evidence the ALJ did not even obtain and review, much less is evaluate" (Pl. Br. at 21) is duplicative of his argument regarding the ALJ's failure to issue a subpoena to United Helpers and the AC's declination to review the Supplemental Records. The court need not address this argument again.

**WHEREFORE,** based on the findings above, it is

ORDERED, that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

ORDERED, that defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

ORDERED, that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Dated:  May 30, 2024

Mitchell J. Katz
U.S. Magistrate Judge

47